# In the United States Court of Federal Claims

No. 26-303
Filed: May 11, 2026
Re-issued: May 20, 2026[1]

| | |
|---|---|
| DUTCH RIDGE CONSULTING GROUP, LLC, | ) |
| *Plaintiff,* | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| *Defendant,* | ) |
| and | ) |
| ASRC FEDERAL ADMINISTRATIVE SERVICES, LLC | ) |
| *Defendant-Intervenor.* | ) |

## OPINION AND ORDER

This protest concerns the cancellation of a solicitation to provide certain services related to investigations for security clearances at the Department of Defense and other agencies. After making the competitive range determination, the agency determined that certain work being procured through another solicitation should be moved to the solicitation at issue here. Then, the contracting officer determined that the new scope was so significant that he had to cancel the solicitation and issue a new solicitation, believing additional vendors would submit proposals. Having been so close to the finish line, Dutch Ridge challenges the cancellation because it believes that all the "new" work was already in the cancelled solicitation. Thus, it is unfair for the agency to make Dutch Ridge compete all over again for work it was "about" to win.

After the court set the schedule in this case, the agency issued its new solicitation. Dutch Ridge finds this new solicitation to be unnecessary because Dutch Ridge believes it is likely to win its underlying protest of the cancellation of the original solicitation. Thus, Dutch Ridge has moved for a preliminary injunction barring the agency from receiving proposals for the new

---

[1] The court initially issued this opinion and order under seal and directed the parties to confer and propose redactions pursuant to the protective order. The parties have jointly proposed redactions that the court adopts with the following notation: "[ * * * ]".

solicitation until the court resolves its protest of the original solicitation.  That is the motion now before the court.

No procurement is perfect, and this one is no exception.  But that does not mean the agency's decision to cancel the original solicitation was arbitrary and capricious.  To the contrary, the court's initial review of the protest leads it to conclude that Dutch Ridge is not likely to prevail on the merits and, more importantly, has failed to show it will face irreparable harm if the court allows the agency to receive proposals in response to the new solicitation.  Because each of these shortcomings is fatal to preliminary injunctive relief, the court denies Dutch Ridge's motion for a preliminary injunction.

## I.      Background

The Defense Counterintelligence and Security Agency ("DCSA") conducts background checks for the federal government.  *See Personnel Vetting*, Defense Counterintelligence and Security Agency (last visited May 11, 2026), https://www.dcsa.mil/Personnel-Vetting; Def.'s Resp.[2] Ex. 1 ¶ 3 ("[ * * * ] Declaration").  For the past twenty years, DCSA's Case Processing Operating Center ("CPOC") has relied on contractors to support this mission.  Tab 39 at AR 10187.  The most recent DCSA CPOC solicitation occurred in 2019, which resulted in an award to Arctic Slope Regional Corporation for Federal Processional Services ("ASRC") in May 2020.  Tab 2 at AR 330.  That contract was originally set to expire on July 31, 2025, but was extended to January 31, 2026. *Id.*; Tab 40A at AR 10196.

Much of the federal government is in the process of modernizing its approach to background investigations through "Trusted Workforce 2.0" ("TW 2.0"), a "policy framework initiative to update the security framework for the security clearance policy procedures and products."  Tab 1C at AR 34.  Central to the TW 2.0 model is the implementation of Continuous Vetting ("CV")—a system that "provides checks on an individual more frequently and aims to promote delivery of real-time information." *Id.* at AR 23.  This CV requirement requires another function, "CV Alert Validation," in which [ * * * ].  [ * * * ] Decl. ¶ 4.  DCSA currently processes CV alerts through a combination of federal employees and contractors under a separate contract, the Personal Support Services ("PS3") contract.  *Id.* ¶ 6.

In anticipation of the ASRC contract's expiration, DCSA issued a Request for Information ("RFI") on June 14, 2024, to identify potential offerors for a new CPOC contract.  Tab 1C at AR 131.  The RFI included a draft Performance Work Statement ("PWS"), which referenced TW 2.0 and emphasized the need for flexibility due to anticipated "statutory, policy

---

[2] Given the timing of Dutch Ridge's motion for preliminary injunctive relief, the court scheduled the responses to the motion for the same time as the cross-motions for judgment on the administrative record ("Cross-MJARs").  The Government addresses Dutch Ridge's success on the merits in its Cross-MJAR, ECF No. 48, and addresses the remaining preliminary injunction factors in its Response to Dutch Ridge's motion, ECF No. 49.  The court therefore cites to the "Def's Cross-MJAR" regarding the likelihood of success on the merits and the "Def's Resp." regarding the remaining factors.  Because the Defendant-Intervenor responded to the preliminary injunction motion as part of its Cross-MJAR, ECF No. 45, the court cites this document as "AFAS's Cross-MJAR."

and technological changes during the life of the . . . contract." *Id.* at AR 23.  For example, the draft PWS provided:

> This work also includes the functions that exist from scheduling an investigation through the delivery of completed of [sic] investigations, and continuous evaluation and/or vetting alerts. Continuous vetting, which provides checks on an individual more frequently and aims to promote delivery of real-time information, may replace periodic reinvestigations during the anticipated contract period of performance.

*Id.*

The RFI led to DCSA's issuance of Solicitation No. HS021256RE001 on March 18, 2025 ("CPOC 1.0"), seeking a firm-fixed price Indefinite Delivery Indefinite Quantity ("IDIQ") contract to provide CPOC Background Investigation Support Services.  Tab 8 at AR 579-80. DCSA amended the solicitation seven times, but the language discussing the CV requirements remained unchanged.  Tab 14a at AR 1362; Tab 36 at AR 9885.  DCSA received [ * * * ] proposals by the final due date of May 15, 2025.  Tab 28 at AR 9344.  Following an evaluation, DCSA determined that [ * * * ] proposals were in the competitive range—those from [ * * * ] and Dutch Ridge.  *Id.* at AR 9346.

On November 26, 2025, DCSA informed Dutch Ridge that CPOC 1.0 evaluations were "taking longer than anticipated," and it was thus extending ASRC's existing CPOC contract by "4 months via a 'Bridge' action."  Tab 37I at AR 10125.  Because ARSC no longer met the relevant size standard, DCSA awarded a bridge contract to ARSC's sister company—ARSC Federal Administrative Services LLC ("AFAS")—on January 30, 2026.  Tab 40A at AR 10197; Tab 58a at AR 10650.  The period of performance under the bridge contract runs from February 1, 2026, to July 31, 2026, with a three-month option period available.  Tab 58I at AR 10777.

Also, in 2025, DCSA formed a Trusted Workforce Implementation Group ("TWIG") to "rapidly accelerate the agency's ability to implement Trusted Workforce (TW) 2.0."  Tab 37A at AR 10046.[3]  In a presentation dated January 16, 2026, the TWIG recommended that DCSA transition CV Alert Validation activities from the PS3 contract to the CPOC contract.  Tab 37B at AR 10055, 10057.  Both CPOC 1.0 and PS3 were active solicitations at the time of the presentation.  *Id.* at AR 10056.  This transition, the TWIG concluded, would "significantly increase[] the volume and type of work included in [sic] beyond original scope of work included in the original [CPOC 1.0] PWS."  *Id.* at AR 10056.  The TWIG thus recommended that the DCSA cancel and re-solicit both CPOC and PS3.  *Id.* at AR 10057.

---

[3] As discussed below in Section IV.A, Dutch Ridge claims that the contracting officer's February 19, 2026, memorandum, Tab 37A, cannot speak to DCSA's reasoning for the CPOC 1.0 cancellation because it came after DCSA made its decision.  *See* ECF No. 39-1 at 9–11.  In the background section, the court cites the memorandum for the limited purpose of explaining the TWIG's inception and functions.

DCSA apparently agreed with the TWIG.  On January 29, 2026, DCSA cancelled both solicitations.  Tab 37A at AR 10053; Tab 37d.  As to the CPOC 1.0 cancellation, the notice explained:

> After receipt of offers, the Government determined changes were required to be made to the Performance Work Statement, which are so substantial as to exceed what prospective offerors reasonably could have anticipated.  As a result, amending the current solicitation as a result of these changes is not in the best interest of the Government.  The Government anticipates issuing a new solicitation at a later date reflecting the changes in scope and adjusted requirements.  Offerors are encouraged to monitor SAM.gov for future announcement.

*Id.* at AR 10066.  The notice also clarified that the cancellation was made pursuant to Federal Acquisition Regulation ("FAR") § 15.206(e).[4]  *Id.*

On April 7, 2026, DCSA posted the new CPOC solicitation ("CPOC 2.0") to SAM.gov with a proposal due date of May 8, 2026.  In line with the TWIG's recommendations, the CPOC 2.0 PWS adds Section 5.4, "Continuous Vetting," which spells out the contractor's CV responsibilities in some detail relative to the CPOC 1.0 PWS.  AR Tab 69a at 11653–54.  At a status conference on May 4, 2026, the Government told the court that DCSA intended to extend the submission deadline for CPOC 2.0 to May 18, 2026.

Dutch Ridge filed its protest at this court on February 23, 2026, challenging DCSA's decision to cancel the CPOC 1.0 solicitation and to award a bridge contract to AFAS.  ECF No. 1 at 1.  The complaint sought permanent injunctive relief as well as bid and proposal costs.  *Id.* at 42.  On April 14, 2026, one week after the CPOC 2.0 posting, Dutch Ridge filed (1) an amended complaint, ECF No. 37; (2) a motion for judgment on the administrative record, ECF No. 38; and (3) a motion for a preliminary injunction, ECF No. 40.  Dutch Ridge did not amend its request for relief in its amended complaint.  ECF No. 38 at 50.  As to the motion for a preliminary injunction, Dutch Ridge asks the court to enjoin DCSA from receiving CPOC 2.0 proposals while Dutch Ridge's protest of the CPOC 1.0 cancellation is pending.  Pltf's Mem. at 1.

## II.    Jurisdiction and Standard of Review

The Tucker Act gives the court jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency."  28 U.S.C. § 1491(b)(1).  The court reviews agency procurement decisions under the standards of the Administrative Procedure Act, 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4).  The "court is not to substitute its judgment for that of the agency . . . .  In reviewing that explanation, a court must consider whether the decision was based on a consideration of the relevant factors and whether there was a clear error of judgment."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

---

[4] The FAR appears in Title 48 of the Code of Federal Regulations.

### III.    Discussion

### A.    The court has jurisdiction to enjoin CPOC 2.0.

Before turning to the merits of Dutch Ridge's motion for preliminary injunctive relief, the court must first address the Government's contention that the court lacks the authority to enjoin CPOC 2.0 in this protest.  Def's Resp. at 2.  This court has jurisdiction over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008).  As the Federal Circuit explained, "the operative phrase 'in connection with' is very sweeping in scope." *Distributed Sols.*, 539 F.3d at 1345 (quoting *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed.Cir.1999)).  Although Congress did not define "procurement" in § 1491, the circuit applied the definition from another statute "related to the establishment of the Office of Federal Procurement Policy in the Office of Management and Budget." *Id.* (internal footnote omitted).  That definition provides that "the term 'procurement' includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout."  41 U.S.C. § 111.[5]

As the Government correctly states, DCSA released the CPOC 2.0 solicitation on April 7, 2026, Tab 70 at AR 11826, one week before the court's deadline to file an amended complaint and MJARs on April 14, 2026, ECF No. 35.  Def.'s Resp. at 4.  And, despite filing its amended complaint after CPOC 2.0's release, it does not seek any relief regarding CPOC 2.0.  Instead, Count I challenges the cancellation of CPOC 1.0, and Count II challenges DCSA's award of the bridge contract.  And the prayer for relief seeks an injunction setting aside the cancellation of CPOC 1.0 and the termination of the bridge contract.  Because the amended complaint does not put CPOC 2.0 at issue, the Government contends that the court lacks the "authority" to enjoin DCSA from receiving proposals in CPOC 2.0.  Def.'s Resp. at 4.  The Government views CPOC 1.0 and CPOC 2.0 as separate procurements and argues that Dutch Ridge fails to allege anything in its complaint that would authorize the court to issue injunctive relief as to CPOC 2.0.  Def's Resp. at 3.  According to the Government, the problem for Dutch Ridge is that this protest is not "in connection with" CPOC 2.0, placing it beyond the court's jurisdiction under 28 U.S.C. § 1491(b)(1).  *See id.* at 4.

While the court is puzzled by Dutch Ridge's failure to include its challenge to CPOC 2.0 in its amended complaint (filed the same day as the motion for preliminary injunction), it is not clear this is a jurisdictional defect.  DCSA did not end CPOC 1.0 and start something new with CPOC 2.0.  Instead, DCSA explicitly sought to add scope to CPOC 1.0, which led to CPOC 2.0. *E.g.*, Tab 37D at AR 10065.  Indeed, CPOC 2.0's PWS is CPOC 1.0's PWS with certain requirements added.  *See* Def.'s Cross-MJAR at 7–8 (discussing CPOC 2.0 PWS § 5.4); Tab 69a at AR 11653–54.  In fact, FAR § 15.206(e) compelled DCSA to resolicit CPOC—when § 15.206(e)'s conditions are met, the contracting officer "shall cancel the original solicitation *and* issue a new one." (emphasis added).  In other words, CPOC 1.0 and CPOC 2.0 do not appear to be such different procurements that the court lacks jurisdiction to hear the preliminary

---

[5] *Distributed Solutions* cites this provision as 41 U.S.C. § 403(2), which has since been recodified as 41 U.S.C. § 111.  *See* Pub. L. 111-350, § 3, 124 Stat. 3677, 3681 (2011).

injunction motion. Dutch Ridge simply seeks to preserve the court's ability to fashion a remedy if Dutch Ridge prevails on its challenge to the cancellation of CPOC 1.0. *See Cont'l Serv. Grp., Inc. v. United States*, 722 F. App'x 986, 995–96 (Fed. Cir. 2018) ("There are cases in which it is necessary to require defendant to disturb the status quo by undoing acts completed before the injunction issues, or by acting affirmatively, in order to preserve the power of the court to render a meaningful decision.") (quoting 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948 (3d ed. 1998)).

In the end, the court concludes that it has jurisdiction to hear and decide Dutch Ridge's motion to enjoin DCSA from receiving CPOC 2.0 proposals.

> **B.      Dutch Ridge has not established its entitlement to preliminary injunctive relief.**

"[A] party is entitled to a preliminary injunction if: (1) the party has a likelihood of success on the merits; (2) the party will be irreparably harmed without injunctive relief; (3) the balance of hardships favors the petitioning party; and (4) the public interest favors the grant of injunctive relief." *Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 317 (2009) (citing *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1353–54 (Fed. Cir. 2008)). "No single factor is determinative, and 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" *Id*. (quoting *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)). "Conversely, 'the absence of an adequate showing with regard to any one factor may be sufficient' to deny preliminary injunctive relief." *Cashman Dredging & Marine Contracting Co., LLC v. United States*, 148 Fed. Cl. 58, 63 (2020) (quoting *FMC*, F.3d at 427). "Preliminary injunctive relief is characterized as an extraordinary remedy." *Id*. "Nevertheless, the decision to award such relief is within the discretion of the court." *Id*. That said, "a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

> 1.      Dutch Ridge has not Established a Reasonable Likelihood of Success on the Merits

The first factor in deciding whether to grant preliminary injunctive relief concerns the plaintiff's likelihood of success on the merits.[6] "'[W]hen analyzing the likelihood of success factor, the trial court, after considering all the evidence available at this early stage of the litigation, must determine whether it is more likely than not that the challenger will be able to prove at trial' the validity of its claim." *Eskridge Rsch. Corp. v. United States*, 92 Fed. Cl. 88, 97 (2010) (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009)). In bid protests, a plaintiff's success on the merits turns on whether the court finds that

---

[6] Although Dutch Ridge challenges the cancellation of CPOC 1.0 and the bridge contract AFAS, the court understands the motion for preliminary injunctive relief to address only the cancellation of CPOC 1.0 because the only relief sought is an injunction barring DCSA from receiving CPOC 2.0 proposals. Pltf.'s Mem. at 1. Thus, the court only addresses the issues surrounding the cancellation of CPOC 1.0 in this opinion and will address the bridge contract when deciding the MJARs.

the procurement decision in dispute was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Akal Sec.*, 87 Fed. Cl. at 315 (citing 5 U.S.C. § 706(2)(A)).

Because the parties frame their arguments around Chief Judge Solomson's articulation of FAR § 15.206(e) in *Seventh Dimension*, the court does so as well:

> If, [1] in the *judgment* of the contracting officer, [2] *based on market research or otherwise*, [3] an amendment proposed for issuance after offers have been received [4] is so substantial as to exceed what prospective offerors reasonably could have anticipated, [5] so that additional sources likely would have submitted offers had the substance of the amendment been known to them, [6] the contracting officer *shall cancel the original solicitation* and issue a new one, [7] regardless of the stage of the acquisition.

*Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 18 (2022), on reconsideration in part, 161 Fed. Cl. 110 (2022) (alterations and emphasis in original). Like the parties, the court addresses whether the contracting officer exercised his judgment before cancelling CPOC 1.0, whether "market research or otherwise" indicated that additional sources would likely have submitted offers, and finally whether the added CV scope exceeded what could reasonably have been anticipated.[7]

### a)    The contracting officer's exercise of judgment.

According to Dutch Ridge, the contracting officer did not exercise any judgment until he signed his memorandum for the record on February 19, 2026, several weeks after cancelling

---

[7] The Government contends that *Seventh Dimension* is wrongly decided insofar as it holds that failure to comply with FAR § 15.206(e) can require the court to enjoin the cancellation and that some form of research is required. Def.'s Cross-MJAR. at 13–14 & n.4. In the Government's view, § 15.206(e) does not require research and a contracting officer can only violate it by failing to cancel a solicitation when added scope exceeds what a reasonable offeror would have understood, and greater competition would be likely if the solicitation were cancelled and reissued. *See, e.g.*, *Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 128–29 (2010). Given the court's resolution of this motion, the court need not wade into any dispute about the proper reading of FAR § 15.206(e). That said, the court does not read *Seventh Dimension* to interpret FAR § 15.206(e) in isolation. Instead, *Seventh Dimension* recognizes that the statutory default for defense procurements subject to Title 10 is that the agency must award a contract after proposals are received unless another provision applies that allows the agency to cancel the solicitation. 160 Fed. Cl. at 16-17. In that regard, it is not so much that violating FAR § 15.206(e) justifies the court enjoining a solicitation cancellation, it is that the failure to properly cancel a solicitation means that the statutory command to award is violated and justifies the injunction. Again, the court need not and does not weigh in on whether *Seventh Dimension* or *Madison Services* is the correct interpretation—or that they are in conflict at all given that the procurement at issue in *Madison Services* does not appear to have been subject to Title 10.

CPOC 1.0.  But this argument wrongly assumes that the contracting officer's lack of contemporaneous documentation means that he did not exercise any judgment before cancelling the CPOC 1.0 solicitation.  "Generally, '[c]ontracting officers are not obligated by the APA to provide written explanations for their actions.'"  *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1313 (Fed. Cir. 2021) (quoting *Impresa*, 238 F.3d at 1337) (alteration in original).  And unlike other FAR provisions, FAR § 15.206(e) does not impose a documentation requirement either.  *See id*. (discussing documentation requirements in FAR §§ 15.304(c)(3)(iii), 15.208(e), 15.407-1(d)).  Thus, the fact that there is not a contemporaneous document does not mean the contracting officer failed to exercise his judgment.  The question is whether the record is "sufficient to permit meaningful judicial review consistent with the Administrative Procedure Act, 5 U.S.C. § 706."  *Palantir USG, Inc. v. United States*, 904 F.3d 980, 994 (Fed. Cir. 2018) (collecting cases).  And to the extent that Dutch Ridge complains that the contracting officer simply adopted the TWIG's judgment as his own, Dutch Ridge has not shown that to be improper even if it was true.  FAR § 15.206(e) requires the contracting officer's judgment; it does not prohibit the contracting officer from relying on others when making that judgment.  When the FAR requires the exercise of independent judgment, it does so expressly.  For example, FAR § 15.308 provides that "[w]hile the [source selection authority] may use reports and analyses prepared by others, the source selection decision shall represent the [source selection authority]'s *independent judgment*."  FAR § 15.308 (emphasis added).

The primary fight about the administrative record is whether the court may consider the contracting officer's memorandum.  Tab 37A.  At the outset, the court recognizes that DCSA made this protest needlessly more difficult to resolve.  Had the contracting officer issued his memorandum on or before January 29, 2026, this case would be simple.  But he did not, opening the door to Dutch Ridge's challenge to the court's consideration of his memorandum in any respect.  In any event, even if the court ultimately agrees that the contracting officer's memorandum is a post hoc rationalization and the administrative record does not sufficiently explain CPOC 1.0's cancellation, "the remedy [is] . . . to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary."  *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973).  In other words, given the national security implications with enjoining CPOC 1.0 or CPOC 2.0, *see* [ * * * ] Decl. ¶¶ 15-31, even if the court excludes the contracting officer's memorandum and the remaining record does not explain DCSA's decisions, the court would almost certainly remand to the agency to further explain its decision rather than permanently enjoining the CPOC 1.0 cancellation.

According to Dutch Ridge, the fact that the contracting officer did not issue his memorandum until after he cancelled CPOC 1.0 makes it an impermissible post hoc rationalization.  *E.g.*, Pltf.'s Mem. at 10, 12.  Indeed, Dutch Ridge refers to the memo as the "Post Hoc Memo" throughout its motion.[8]  But it is not so clear that the contracting officer's

---

[8] At various times, Dutch Ridge refers to the contracting officer's memorandum as having "glaring" problems and discusses its "preposterousness."  *See* Pltf.'s Mem. at 14, 21.  Dutch Ridge's descriptive flourishes, however, take away from its argument.  *Cf. Hayes v. Self-Help Credit Union*, No. 1:13-CV-880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) ("The extravagant use of adverbs is distracting at best and constitutes little more than opinions of counsel.  Indignation does not support a claim for relief[.]").

memorandum is an impermissible post hoc rationalization.  It is certainly true that the court looks skeptically at documentation that post-dates an agency's final decision.  *E.g.*, *Jacobs Tech., Inc. v. United States*, 100 Fed. Cl. 198, 208 (2011) ("[T]he Supreme Court has held that post hoc rationalizations that are part of the administrative record should not be relied upon as the basis for reviewing an agency's decision."); *IAP Worldwide Servs., Inc. v. United States*, 159 Fed. Cl. 265, 286 (2022) ("[P]ost hoc explanations for agency decisions ordinarily will be rejected.").  And here Dutch Ridge asserts that it shared a copy of its draft complaint with the Government on February 18, 2026, and the contracting officer's memorandum is a response to that draft complaint.  Pltf.'s Mem. at 10.  The receipt of the draft complaint may heighten the court's skepticism about the contracting officer's memorandum, but it does not necessarily preclude the court's consideration.

Not all later-in-time explanations are impermissible post hoc rationalizations.  *E.g.*, *Harmonia Holdings Grp., LLC v. United States*, No. 21-1704C, 2022 WL 402399, at *3 (Fed. Cl. Jan. 25, 2022) (discussing *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6–7 (D.C. Cir. 2006)).  When determining whether a later explanation is permissible, DCSA may not offer "a new reason for a prior decision."  *CRAssociates, Inc. v. United States*, 95 Fed. Cl. 357, 376 n.15 (2010).  But the contracting officer may provide "further explanation for a decision already made" without rendering his memorandum a post hoc rationalization.  *Id.*; *see also D&S Consultants, Inc. v. United States*, 101 Fed. Cl. 23, 35 (2011), *aff'd*, 484 App'x 558 (Fed. Cir. 2012) (same). Here, no party disputes that the contracting officer may not offer a new rationale for his prior decision.  *E.g.*, Def.'s Cross-MJAR at 11-12 (collecting cases); Def.-Int.'s Cross-MJAR at 5–6 (same). The question then is whether the contracting officer's memorandum offers a new rationale or simply adds explanation to the prior decision making.

As in *Camp*, here there were contemporaneous explanations for DCSA's decision (the TWIG analyses, cancellation notice, etc.) that clearly "indicated the determinative reason for the final action taken[.]"  *Id.*  The CPOC 1.0 cancellation "must, therefore, stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review."  *Id*.  As explained below, the contracting officer's memorandum provides further explanation of the CPOC 1.0 cancellation based on rationales that are evident in the contemporaneous record.

The contemporaneous record gets the court most, if not all, of the way to understanding the contracting officer's cancellation decision.  Recall how the cancellation happened.  After DCSA established the competitive range in CPOC 1.0, the TWIG recommended terminating the CPOC 1.0 and PS3 solicitations so that DCSA could move the CV processing work from PS3 to CPOC 2.0 and resolicit both.  Tab 37B.  DCSA posted the CPOC 1.0 cancellation notice to SAM.gov on January 29, 2026, which stated:

> The Government hereby cancels solicitation HS002125RE001 as of January 29, 2026 due to mission directed changes to the requirement as solicited.  This cancellation is made in accordance with Federal Acquisition Regulation (FAR) 15.206(e).
>
> After receipt of offers, the Government determined that changes were required to be made to the Performance Work Statement,

> which are so substantial as to exceed what prospective offerors
> reasonably could have anticipated.

Tab 37D at AR 10065.[9]  This provides a starting point to determine the contracting officer's reasoning for cancelling CPOC 1.0.  The administrative record also includes DCSA's analyses of all the factors that led it to decide to terminate CPOC 1.0 and add continuous vetting processing to CPOC 2.0.  *E.g.*, Tabs 37A - 37N.  For all its argument about the contracting officer's memorandum being a post hoc rationalization, Dutch Ridge has not identified new rationales he offered that were not already set forth in the contemporaneous record.  Thus, although the court may look skeptically at the contracting officer's memorandum, Dutch Ridge has not provided a sufficient basis for the court to ignore it.  But even if Dutch Ridge does prevail on its challenge to the contracting officer's memorandum, the court remains unlikely to enjoin the cancellation of CPOC 1.0, preferring to remand for further explanation.

> b)  *Market research or otherwise reasonably indicated that more sources likely would have submitted proposals.*

Relying largely on the timing of the contracting officer's memorandum, Dutch Ridge contends that DCSA did not conduct market research before cancelling CPOC 1.0 in violation of FAR § 15.206(e).  *See* Pltf.'s Mot. at 15.  The court is not convinced.  The contracting officer was clearly aware that the TWIG recommended moving the CV Alert Validation work from the PS3 solicitation to the CPOC 2.0 solicitation—he explained that DCSA's vetting leadership met with procurement officials on January 16, 21, and 24, 2026, to discuss the TWIG's recommendations.  Tab 37A at AR 10049.  And DCSA cancelled the PS3 solicitation on the same day that it cancelled CPOC 1.0.  *Id.* at AR 10053.  Again, DCSA was doing all of this to move a portion of the scope of work from the PS3 contract to the CPOC contract.  The contracting officer's decision did not come out of thin air.

As for the likelihood that more offerors would have submitted proposals had they known of the added scope, the conclusion is all but self-evident.  Given that DCSA was moving the CV Alert Validation work from PS3 to CPOC 2.0, it is certainly reasonable to conclude that companies bidding on PS3 would likely submit a proposal in response to CPOC 2.0 once the PS3 work migrated over.

> c)  *The contracting officer reasonably concluded that the added scope of work was beyond the scope of CPOC 1.0.*

Finally, Dutch Ridge contends that CPOC 1.0 already included all the CV work, meaning there was no need to amend the solicitation in the first place.  Pltf.'s Mot. at 15-19.  This argument, however, is also unconvincing.  Both the contracting officer's memorandum and the contemporaneous record are replete with explanations for why the new CV work found in CPOC 2.0's PWS § 5.4 is, in effect, a cardinal change from CPOC 1.0.  While the contracting officer considered the added effort and cost of the new work, the Parties vigorously dispute the propriety of that consideration.  *See* Pltf.'s Mot. at 19-25; Def.'s Cross-MJAR at 18-25.  The court, however, need not resolve that dispute now.  At this stage, the contracting officer's

---

[9] DCSA also cancelled PS3 on January 29, 2026.  Tab 37A at AR 10053.

memorandum and the contemporaneous records indicate that the transition of the CV Alert Validation work from PS3 to CPOC 2.0 is likely sufficient establish that it was beyond the scope of CPOC 1.0.

It is not hard to see the difference between CPOC 1.0 and CPOC 2.0.  There is no dispute that CV Alert Validation work is currently being performed by a combination of PS3 contractors and federal employees.  *E.g.*, Tab 37A at 10049; [ * * * ] Decl. ¶ 6.  Nor is there any dispute that this work is resource intensive.  [ * * * ] Decl.  ¶ 6, n. 1.  In fact, [ * * * ].  *Id.*  And finally, there is no dispute that DCSA is transitioning all this work to CPOC 2.0.  Put simply, CPOC 2.0 represents an increase in scope because it requires considerable work that CPOC 1.0 did not.

Dutch Ridge's argument to the contrary is unavailing.  True, the CPOC 1.0 PWS included several references to TW 2.0, CV processing, and possible future CV requirements, but there were virtually no requirements relating to the actual performance of end-to-end CV processing.  The CPOC 1.0 PWS focused on traditional background investigation processes and, at most, required the "*support* of continuous evaluation and/or vetting alerts."  Tab 8A at AR 615 (emphasis added).  For example, although CPOC 1.0 included a CLIN for CV Alert Validation, *see* Tab 14G, the PWS only called for the contractor to retrieve CV reports from one system and ensure they were stored in the proper place.  Tab 15 at AR 2359.  By contrast, Section 5.4 in the CPOC 2.0 PWS spells out the specific performance requirements for end-to-end CV processing in detail—including validating CV alerts and generating CV reports.  Tab 69A at AR 11653-54.

In sum, what CPOC 1.0 required contractors to support, CPOC 2.0 requires contractors to perform.  It was thus reasonable for DCSA to determine that this change represented an increase in scope sufficient to require cancellation under FAR § 15.206(e).

### 2. Irreparable Harm

The irreparable harm inquiry considers whether the movant has "an adequate remedy in the absence of an injunction."  *GEO Grp., Inc. v. United States*, 100 Fed. Cl. 223, 228 (2011) (citing *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993)); *Serco, Inc. v. United States*, 81 Fed. Cl. 463, 501-02 (2008) (citation omitted).  Because the motion before the court is for a preliminary injunction, this inquiry focuses on whether the movant "will suffer irreparable harm before a decision can be rendered on the merits" of this case.  *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001); *see also Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 319 (2009) ("[A] plaintiff must show that without a preliminary injunction it will suffer irreparable harm before a decision can be rendered on the merits.").  Here, Dutch Ridge falls short.

Dutch Ridge claims it will face several irreparable harms if the court does not issue a preliminary injunction that prohibits the DCSA from *receiving* proposals for the CPOC 2.0 solicitation.  Pltf's Mot. for Prelim. Injunction (ECF No. 40-1) at 25-28.  According to Dutch Ridge, it will be harmed if it is "required to incur additional time, effort, and resources to compete for an award for which it has already competed and had a substantial chance of winning . . . ."  *Id*. at 26.  Dutch Ridge's [ * * * ] explained that it spent roughly [ * * * ] hours and spent [ * * * ] preparing its proposal for CPOC 1.0.  Decl. [ * * * ] ¶ 8.  And if the court does not enjoin the receipt of CPOC 2.0 proposals, he asserts that Dutch Ridge will incur another [ * * * ] hours of work and spend an additional [ * * * ] updating its proposal from CPOC 1.0 to make it

11

responsive to CPOC 2.0.  *Id.* ¶ 13.  Dutch Ridge contends, without citation, that "it would not be able to recover the additional bid and proposal costs it had to expend recompeting for award under CPOC 2.0.  Those costs would be needlessly wasted."  Pltf.'s Mot. for Prelim. Injunction at 27.  This claimed harm does not suffice to establish irreparable harm for several reasons.

First, it is not clear that Dutch Ridge would be unable to recover its additional bid and proposal costs.  28 U.S.C. § 1491(b)(2); *Reema Consulting, Inc. v. United States*, 107 Fed. Cl. 519, 532 (2012).  The Government contends that these damages are unrecoverable because they are not tied to the cancellation of CPOC 1.0; they relate exclusively to Dutch Ridge's choice to participate in the CPOC 2.0 competition.  Gov't Resp. to Mot. for Prelim. Injunction (ECF No. 49) at 6-7.  If, in the end, the court agrees with Dutch Ridge that CPOC 2.0 is within the scope of this protest, then there is no apparent reason that the court could not award bid and proposal costs if Dutch Ridge prevails on the merits.  If, however, the court agrees with the Government that CPOC 2.0 is beyond the scope of this protest, the inability to recover the added bid and proposal costs would be the result of Dutch Ridge's own litigation choices.

Second, it is all-but-certain that entering an injunction now, a few days before proposals are due, will do little (if anything) to prevent Dutch Ridge from incurring the added costs and effort of responding to CPOC 2.0.  CPOC 2.0's solicitation originally called for proposal submission on May 8, 2026.  Tab 70 at AR 11826.  On or about May 4, 2026, DCSA extended the deadline to May 18, 2026, to allow offerors to account for DCSA's answers to questions it received when offerors finalize their proposals.  Given the timing, Dutch Ridge would have incurred most, if not all, of the added effort and expense it complains of by the time the court heard argument on April 30, 2026, and enjoining the DCSA from receiving CPOC 2.0 proposals will not change that.

Finally, Dutch Ridge complains that it would be irreparably harmed by competing in CPOC 2.0 because that solicitation "adds unduly restrictive requirements to the updated PWS that clearly favor the incumbent and will deprive [Dutch Ridge] of the ability to compete fairly for the award . . . ."  Pltf.'s Mem. at 27.  The court rejects this claim entirely.  Dutch Ridge has not protested the terms of CPOC 2.0, and it is inappropriate to try to claim irreparable harm based on the terms of CPOC 2.0 without protesting those terms or establishing that they are "unduly restrictive."  The court will not allow Dutch Ridge to convert arguments properly made in a pre-award protest of CPOC 2.0 into the irreparable harm argument regarding the cancellation of CPOC 1.0.  If Dutch Ridge has concerns about the terms of CPOC 2.0, it may protest those terms before proposal submission.[10]  It may not avoid the burden of proving that CPOC 2.0 has "unduly restrictive terms" on the merits through conclusory arguments about CPOC 2.0's terms as irreparable harm from CPOC 1.0's cancellation.

Dutch Ridge has failed to establish that it will suffer irreparable harm absent a preliminary injunction.

---

[10] Of course, if Dutch Ridge protests CPOC 2.0, there would be no doubt that bid and proposal costs would be available either in this protest or that one.

## IV.    Conclusion

Because Dutch Ridge has not shown that it is likely to prevail on the merits or that it will face irreparable harm without a preliminary injunction barring DCSA from receiving proposals for CPOC 2.0, the court DENIES Dutch Ridge's motion for a preliminary injunction, ECF No. ECF No. 40.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge
